Filed:  April 2, 2013

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

No. 11-6781
(1:07-cr-00518-JFM-1; 1:10-cv-00706-JFM)

───────────────

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CORTEZ FISHER,

Defendant - Appellant.

───────────────

O R D E R

───────────────

The Court amends its opinion filed April 1, 2013, as follows:

On the cover sheet, case disposition section, the spelling of Judge Agee's name is corrected.

For the Court – By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 11-6781

CORTEZ FISHER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Senior District Judge.
(1:07-cr-00518-JFM-1; 1:10-cv-00706-JFM)

Argued: October 26, 2012

Decided: April 1, 2013

Before AGEE, WYNN, and FLOYD, Circuit Judges.

---

Reversed by published opinion. Judge Wynn wrote the majority opinion, in which Judge Floyd joined. Judge Agee wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** Marta Kahn, Baltimore, Maryland, for Appellant. Philip S. Jackson, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON**

2                   UNITED STATES v. FISHER

**BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

---

## OPINION

WYNN, Circuit Judge:

It is axiomatic that, "to be constitutionally valid, a plea of guilty must be knowingly and voluntarily made." *United States v. Brown*, 117 F.3d 471, 473 (11th Cir. 1997). And "a guilty plea is not knowingly and voluntarily made when the defendant has been misinformed" as to a crucial aspect of his case. *Id.*

In this extraordinary case, the law enforcement officer responsible for the investigation that led to the defendant's arrest and guilty plea himself later pled guilty to having defrauded the justice system in connection with his duties as an officer. Regarding this case specifically, the officer admitted to having lied in his sworn affidavit that underpinned the search warrant for the defendant's residence and vehicle, where evidence forming the basis of the charge to which the defendant pled guilty was found. We hold that the officer's affirmative misrepresentation, which informed the defendant's decision to plead guilty and tinged the entire proceeding, rendered the defendant's plea involuntary and violated his due process rights. Accordingly, we reverse the district court's decision holding otherwise and remand for further proceedings.

I.

A.

On October 29, 2007, Mark Lunsford, a Baltimore City Drug Enforcement Agency ("DEA") Task Force Officer,

UNITED STATES v. FISHER                    3

applied for a search warrant for Defendant Cortez Fisher's
residence and vehicle. In his sworn affidavit—the sole affida-
vit supporting the application for the search warrant—Luns-
ford averred that he targeted Defendant after a confidential
informant told him that Defendant distributed narcotics from
his residence and vehicle and had a handgun in his residence.
Lunsford described the confidential informant as a "reliable"
informant who had previously provided him with information
that led to numerous arrests for narcotics violations. J.A. 46,
149. Lunsford further averred that the confidential informant
provided him with a physical description of Defendant,
Defendant's residential address, the make and model of
Defendant's vehicle, and his license plate number. Based on
the information provided by the confidential informant, Luns-
ford obtained a photograph of Defendant. Lunsford showed
the photograph to the confidential informant, who then con-
firmed Defendant's identity. Lunsford declared that he subse-
quently conducted surveillance and saw Defendant make
narcotics transactions from his car, after which Defendant
returned to his residence.

   On the morning of October 29, 2007, Lunsford and other
officers saw Defendant leave his residence and stopped him
for questioning. According to Lunsford, Defendant declined
questioning and backed into a police vehicle. Officers then
arrested and searched Defendant and found fifty empty glass
vials in his pants pocket.

   Solely on the basis of his sworn affidavit, Lunsford
obtained a search warrant for Defendant's residence and vehi-
cle on October 29, 2007 and executed the warrant that same
day. During the search, officers found crack cocaine and a
loaded handgun.

   Defendant was charged with one count of possession with
intent to distribute cocaine base in violation of 21 U.S.C.
§ 841 and one count of possession of a firearm by a convicted
felon in violation of 18 U.S.C. § 922(g). Defendant entered

4                    UNITED STATES V. FISHER

into a plea agreement which, among other things, required
him to plead guilty to possession of a firearm by a felon.
Defendant was sentenced to ten years in prison.

## B.

Over a year after Defendant pled guilty, in September
2009, Lunsford was charged with various fraud and theft
offenses related to his duties as a DEA officer, including
falsely attributing information to a confidential informant
with whom he was splitting reward money. On March 15,
2010, Lunsford pled guilty to several such offenses. As part
of his plea agreement, Lunsford admitted to falsely identify-
ing a confidential informant on an affidavit supporting a wire-
tap application, an affidavit supporting a criminal complaint,
and numerous investigation reports. Regarding Defendant's
case, Lunsford admitted to the Federal Bureau of Investiga-
tion that the confidential informant he identified in his affida-
vit "had no connection to the case" and that another individual
was "the real informant[.]" J.A. 65.

Shortly after Lunsford's guilty plea, Defendant filed a pro
se motion seeking to have his guilty plea vacated based upon
Lunsford's criminal misconduct. On motion of the Federal
Public Defender's Office, the district court appointed counsel
to represent Defendant. The district court denied Defendant's
motion to vacate on July 28, 2010. Defense counsel subse-
quently filed a motion to alter or amend the judgment,
requesting that the district court reconsider its order and
reopen the proceeding with the assistance of counsel. Defense
counsel also filed a supplement to Defendant's pro se motion
to vacate. On May 31, 2011, the district court filed a Memo-
randum and an Order denying Defendant's motion to vacate,
stating:

> Unquestionably, if [Defendant] had known of Luns-
> ford's criminal misconduct, he would have filed a
> motion to suppress, and the motion may well have

been successful. Nevertheless, [Defendant] does not deny that he was unlawfully in possession of a firearm (as he admitted under oath during his Rule 11 colloquy). Under these circumstances[,] I cannot find that a failure to allow [Defendant] to withdraw his guilty plea would result in a "miscarriage of justice." Certainly, [Defendant] was denied of an opportunity to pursue a motion to suppress that might have been meritorious, but neither the Government nor his own counsel was aware of Lunsford's criminal misconduct at the time that [Defendant] entered his guilty plea and was sentenced. Therefore, it cannot be said that [Defendant's] counsel was ineffective or that the Government breached any obligation that it owed to him. . . .

J.A. 136 (internal citation omitted).

Nevertheless, the district court granted Defendant's motion for a certificate of appealability as to his Sixth Amendment ineffective assistance of counsel claim. Thereafter, this Court granted Defendant's motion to expand the certificate of appealability to include the issue of whether the belated disclosure of Lunsford's misconduct rendered Defendant's plea invalid under the Due Process Clause.

II.

A.

After the imposition of a sentence, a guilty plea may be set aside pursuant to 28 U.S.C. § 2255. *United States v. Davis*, 954 F.2d 182, 184 (4th Cir. 1992). In reviewing a ruling on a motion to vacate a plea under Section 2255, we review a district court's legal conclusions de novo and its findings of fact for clear error. *United States v. Roane*, 378 F.3d 382, 395 (4th Cir. 2004).

6                     UNITED STATES V. FISHER

### B.

### 1.

Defendant first contends that the district court erred by con-
cluding that his guilty plea was knowing, intelligent, and vol-
untary because he did not know at the time he entered his plea
that Lunsford lied in his search warrant affidavit. Defendant
essentially argues that his plea is constitutionally infirm for
two distinct reasons: (1) Lunsford's underlying pre-plea mis-
conduct rendered his plea involuntary under *Brady v. United
States*, 397 U.S. 742 (1970); and (2) the government failed to
meet its evidentiary disclosure obligations under *Brady v.
Maryland*, 373 U.S. 83 (1963).[1] We turn first to Defendant's
*Brady v. United States* argument.

"[A] guilty plea is a grave and solemn act to be accepted
only with care and discernment[.]" *Brady v. United States*,
397 U.S. at 748. When a defendant pleads guilty, he forgoes
not only a fair trial, but also other accompanying constitu-
tional guarantees. *United States v. Ruiz*, 536 U.S. 622, 628
(2002). Thus, a guilty plea "not only must be voluntary but
must be [a] knowing, intelligent act[ ] done with sufficient
awareness of the relevant circumstances and likely conse-
quences." *Brady v. United States*, 397 U.S. at 748.

"The longstanding test for determining the validity of a
guilty plea is whether the plea represents a voluntary and
intelligent choice among the alternative courses of action
open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56
(1985) (citations and quotation marks omitted). The Supreme
Court has outlined the following standard as to the voluntari-
ness of guilty pleas:

---

[1]To lessen the likelihood of confusion, we refer to each *Brady* opinion
by its full name.

A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady v. United States*, 397 U.S. at 755 (quotation and quotation marks omitted). Accordingly, to set aside a plea as involuntary, a defendant who was fully aware of the direct consequences of the plea must show that (1) "some egregiously impermissible conduct (say, threats, *blatant misrepresentations*, or untoward blandishments by government agents) antedated the entry of his plea" and (2) "the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." *Ferrara v. United States*, 456 F.3d 278, 290 (1st Cir. 2006) (emphasis added) (citations omitted); *see also Brady v. United States*, 397 U.S. at 755.

Citing *Brady v. United States* and *Ferrara*, Defendant contends that the officer's deliberate misrepresentation underpins the entire case against him and induced his guilty plea, thereby rendering his plea involuntary. We agree.

2.

To set aside his plea as involuntary, Defendant first must show that impermissible government conduct occurred. *Brady v. United States*, 397 U.S. at 757; *Ferrara*, 456 F.3d at 290. The Supreme Court has held that government misrepresentations constitute impermissible conduct. *Brady v. United States*, 397 U.S. at 755. As the dissent points out, *Brady v. United States* did not specifically define government misrepresentations. Nonetheless, the *Brady v. United States* opinion

8                    UNITED STATES v. FISHER

provides selected examples, including that prosecutors may not make "unfulfilled or unfulfillable promises" to induce guilty pleas. *Id.*; *see also Santobello v. New York*, 404 U.S. 257, 262 (1971); *United States v. Ayala*, 601 F.3d 256, 270 (4th Cir. 2010); *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973). Accordingly, this Court allowed a defendant to withdraw his guilty plea as involuntary because the prosecutor misrepresented the sentence he would receive, telling the defendant that he would not be sentenced to prison. *United States v. Hammerman*, 528 F.2d 326, 331-32 (4th Cir. 1975).

But *Brady v. United States* does not limit government misrepresentations to prosecutorial promises designed to elicit a guilty plea. Consequently, the First Circuit has held that the government may not make "plain[ ]" and "inexcusabl[e]" misrepresentations not anchored to any permissible litigation strategy. *Ferrara*, 456 F.3d at 293. In *Ferrara*, for example, the government explicitly represented that the prosecution would satisfy its continuing duty to disclose all exculpatory evidence in a timely manner. *Id.* Not only did the government fail to disclose as promised, it explicitly misrepresented that it had either disclosed to the defendants all exculpatory information or notified them of the exculpatory evidence it refused to disclose. *Id.* The First Circuit held that the affirmative misstatements "plainly and inexcusably misrepresented the true state of affairs" and constituted "blatant misconduct" that was "sufficient to ground the petitioner's claim that his guilty plea was involuntary."[2] *Id.* (citation omitted).

---

[2] In *Ruiz*, the Supreme Court held that the government's failure to disclose material impeachment evidence prior to a criminal defendant's guilty plea did not render the plea involuntary. 536 U.S. at 628. *Ruiz* did not, however, address evidence beyond that for impeachment purposes, and as the First Circuit noted, "the prosecution's failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea." *Ferrara*, 456 F.3d at 291 (citations omitted). Notably, however, this case centers not on a *Brady v. Maryland* failure to disclose but rather on something categorically different: affirmative misrepresentations.

Even defense counsel misrepresentations can undermine the validity of a plea. *Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973). For example, in *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979), this Court concluded that although a defendant need not be informed about his parole eligibility date prior to entering a guilty plea, "when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel. When the erroneous advice induces the plea, permitting him to start over again is the imperative remedy for the constitutional deprivation." *Id.* at 65.

This case presents highly uncommon circumstances in which gross police misconduct goes to the heart of the prosecution's case. Lunsford falsely testified in his sworn search warrant affidavit that he targeted Defendant after a reliable confidential informant told him that Defendant distributed narcotics from his residence and vehicle and had a handgun in his residence. Lunsford identified the confidential informant in his affidavit, and he averred that the informant identified Defendant in a photograph and provided Lunsford with Defendant's physical description, address, and vehicle information. On the basis of that affidavit, Lunsford secured a search warrant. That warrant enabled the search of Defendant's home, where evidence forming the basis of the charge to which he pled guilty was found. After Defendant was charged, the prosecution provided Lunsford's affidavit to Defendant, who relied on it in deciding whether to plead guilty. Over a year after Defendant pled guilty, Lunsford himself pled guilty to fraud and theft offenses and admitted that the confidential informant he identified in his affidavit "had no connection to the case." J.A. 65.

"Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Brady v. United States*, 397 U.S. at 756. Nevertheless, the Constitution "per-

mits a court to accept a guilty plea, with its accompanying
waiver of various constitutional rights, despite various forms
of misapprehension under which a defendant might labor."
*Ruiz*, 536 U.S. at 630 (citations omitted).

    This, however, is not a case where Defendant sought to
withdraw his plea "merely because he discover[ed] long after
the plea ha[d] been accepted that his calculus misapprehended
the quality of the State's case or the likely penalties attached
to alternative courses of action." *Brady v. United States*, 397
U.S. at 757. Rather, Defendant's misapprehension stems from
an affirmative government misrepresentation that "strikes at
the integrity of the prosecution as a whole." Reply Br. at 4;
*see Ferrara*, 456 F.3d at 291 (stating that it is only when a
defendant's misapprehension of the strength of the govern-
ment's case "results from some particularly pernicious form
of impermissible conduct that due process concerns are impli-
cated" (citations omitted)). Indeed, the lawyer who repre-
sented Defendant in the underlying criminal proceedings
declared under oath that "an examination of the warrant —
including the legality of its issuance and its service — was a
critical part of my evaluation of the government's case." J.A.
121. Because the lawyer thought that there were no grounds
on which to challenge the warrant, she believed the govern-
ment's case to be "a strong one" and advised Defendant to
enter a plea. J.A. 121.

    Even the government and the district court acknowledged
the importance of Lunsford's misrepresentation. On appeal,
the government notes that had it "learned of Lunsford's mis-
conduct prior to [Defendant's] guilty plea, it would have dis-
closed that information to the defense." Appellant Br. at 14
n.2. And in refusing to set aside Defendant's guilty plea, the
district court recognized the importance of the information by
stating that, "[u]nquestionably, if [Defendant] had known of
Lunsford's criminal misconduct, he would have filed a
motion to suppress, and the motion may well have been suc-

cessful." J.A. 136. Without the suppressed evidence, there likely would have been no prosecution at all.

The government and the dissent point out that neither the prosecution nor defense counsel knew about Lunsford's lies at the time Defendant entered his plea. Neither the timing, nor the prosecution's good faith, however, negates the undisputed fact that the evidence the prosecution presented to Defendant and his counsel during deliberations as to whether Defendant should plead guilty was obtained under a search warrant issued solely on the basis of an untruthful law enforcement affidavit. *Cf. Hammerman*, 528 F.2d at 331 (noting that it does not matter that the prosecutor's "prediction or promise was made in good faith; what matters is it was probably relied upon" by the defendant in deciding to plead guilty (citations omitted)); *Correale*, 479 F.2d at 947 (stating that prosecutorial misrepresentations, though made in good faith, are not acceptable).

The government and the dissent further observe that Defendant has never claimed actual innocence. Yet neither cites, nor did we find, a case holding that a defendant's factual innocence is a prerequisite to finding a plea invalid. Instead, in assessing the validity of a defendant's plea, courts look to "all of the relevant circumstances surrounding" the plea. *Brady v. United States*, 397 U.S. at 749. Thus, while a claim of innocence is perhaps an important factor in this assessment, it is by no means a dispositive one. *See e.g.*, *Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000) (courts assessing the validity of a defendant's plea "may consider such factors as whether there is evidence of factual guilt"); *United States v. Garcia*, 401 F.3d 1008, 1013 (9th Cir. 2005) (noting that while courts can consider a defendant's claim of innocence in support of a motion to withdraw a plea, a defendant may have valid reasons for withdrawing a plea "that have nothing to do with innocence").

In sum, Defendant has successfully shown that impermissible government conduct—an officer's deliberate lie that led to

the warrant that led to the discovery of the evidence against him—occurred.

### 3.

To have his plea vacated, in addition to showing impermissible government conduct, Defendant must show that the misconduct induced him to plead guilty. *Brady v. United States*, 397 U.S. at 755. In other words, Defendant must show "a reasonable probability that, but for the misconduct, he would not have pleaded guilty and would have insisted on going to trial." *Ferrara*, 456 F.3d at 294 (citation omitted). Courts take an objective approach to determining reasonable probability. *Id.* Thus, Defendant must show that a reasonable defendant standing in his shoes likely would have altered his decision to plead guilty, had he known about Lunsford's misconduct. *See id.*

Here, Defendant argues that his "entire approach to the case would have been different," had he known about Lunsford's affirmative misrepresentation and felonious behavior. Appellant Br. at 17. In support of Defendant's argument, the lawyer who represented him in the underlying criminal proceedings declared under oath that

> [h]aving fully reviewed [Defendant's] file and the information that I now know about Mark Lunsford, I can state with full confidence that my approach to [Defendant's] case in 2007 and 2008 would have been entirely different had I known then what I know now. I would have advocated strongly for a different outcome for the case. The options I would have sought in good faith range from an outright dismissal, to a dismissal in lieu of state prosecution, to a plea in federal court to a significantly lower sentence. Were negotiations with [the prosecution] not successful, I would have sought to suppress the evidence against [Defendant], including filing a motion

to suppress and seeking a *Franks* hearing. Were we
to lose at such a hearing, I would have advised
[Defendant] that a key consideration in deciding
whether to enter a guilty plea or proceed to trial was
the role that Officer Lunsford's credibility would
play at trial. I believe . . . that I very likely would
have obtained a better result than the 10 year sen-
tence I advised [Defendant] to accept in 2008.

J.A. 122. Even the district court agreed with Defendant, stat-
ing that, "*[u]nquestionably, if [Defendant] had known of
Lunsford's criminal misconduct, he would have filed a motion
to suppress, and the motion may well have been successful*."
J.A. 136 (emphasis added).

   The dissent points out that Defendant may not have pre-
vailed in challenging the validity of the search warrant. Yet
the relevant inquiry is not whether Defendant undoubtedly
would have prevailed in challenging the search warrant and
its fruits, but whether there is a "reasonable probability" that
he would not have plead guilty, had he known of the imper-
missible government conduct. *Ferrara*, 456 F.3d at 294. This,
Defendant has shown.

   Moreover, we cannot agree with the dissent's analysis of
the search warrant under *Franks v. Delaware*, 438 U.S. 154
(1978). In *Franks*, the Supreme Court held that a defendant
challenging the validity of a search warrant is entitled to a
hearing if he preliminarily shows that: (1) the warrant affida-
vit contained a "deliberate falsehood" or statement made with
"reckless disregard for the truth" and (2) without the allegedly
false statement, the warrant affidavit is not sufficient to sup-
port a finding of probable cause. *Id.* at 155-56, 171. And if,
at hearing, the defendant establishes those elements, the
search warrant must be voided and the fruits of the search
excluded from evidence. *Id.* at 156.

   Here, Lunsford admitted that his search warrant affidavit
contained a deliberate falsehood: The confidential informant

14                    UNITED STATES v. FISHER

he identified in the affidavit in fact "had no connection to the
case." J.A. 65. Thus, the confidential informant listed on the
search warrant affidavit clearly did not: report Defendant as
a narcotics distributor; provide Lunsford with Defendant's
physical description, address, or vehicle information; or iden-
tify Defendant in a photograph. Lunsford later identified
another individual as "the real informant[.]" J.A. 65. Yet
Lunsford did not indicate that that individual actually pro-
vided all of the information on the search warrant affidavit.
And regardless, the record in this case shows that the confi-
dential informant listed on the search warrant affidavit did not
provide all of the above-mentioned information. Without that
information, a district court could reasonably conclude that
Lunsford's search warrant affidavit failed to establish proba-
ble cause. Indeed, the district court here concretely stated that
Defendant's efforts to suppress may well have been success-
ful.

   Further, even if Defendant's suppression efforts were not
successful, there is a reasonable probability that knowledge of
Lunsford's criminal misconduct would have changed Defen-
dant's decision to plead guilty. As Defendant's attorney
explained, even if Defendant lost at a *Franks* hearing, "I
would have advised [Defendant] that a key consideration in
deciding whether to enter a guilty plea or proceed to trial was
the role that Officer Lunsford's credibility would play at
trial." J.A. 122.

   In sum, we conclude that Defendant has shown a reason-
able probability that he would not have pled guilty, had he
known about Lunsford's criminal misconduct. And because
we conclude that Lunsford's misconduct renders Defendant's
plea involuntary under *Brady v. United States*, we need not,
and therefore do not, address whether the government vio-
lated its *Brady v. Maryland* disclosure obligations.

UNITED STATES v. FISHER                                    15

### III.

Given the totality of the circumstances of this case—a law enforcement officer intentionally lying in a affidavit that formed the sole basis for searching the defendant's home, where evidence forming the basis of the charge to which he pled guilty was found—Defendant's plea was involuntary and violated his due process rights. Under these egregious circumstances, Defendant was "deceived into making the plea, and the deception prevents his act from being a true act of volition." *Lassiter v. Turner*, 423 F.2d 897, 900 (4th Cir. 1970) (citation omitted). The district court therefore erred by denying Defendant's motion to vacate his plea under 28 U.S.C. § 2255, and we accordingly reverse.[3]

Our decision to vacate Defendant's plea is supported by the important interest of deterring police misconduct. *See e.g. Franks*, 438 U.S. at 165-66 (applying the exclusionary rule to deter deliberate or reckless untruthfulness in warrant affidavits); *Stone v. Powell*, 428 U.S. 465, 492 (1976) (stating that "[e]vidence obtained by police officers in violation of the Fourth Amendment is excluded at trial in the hope that the frequency of future violations will decrease"). If a defendant cannot challenge the validity of a plea based on subsequently discovered police misconduct, officers may be more likely to engage in such conduct, as well as more likely to conceal it to help elicit guilty pleas. *See Sanchez v. United States*, 50 F.3d 1448, 1453 (9th Cir. 1995) (stating that "if a defendant may not raise a *Brady* [*v. Maryland*] claim after a guilty plea, prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas").

Further, Defendant should not be penalized because he did not discover Lunsford's misconduct earlier. In another case

---

[3]This opinion does not preclude the government from retrying Defendant on both the charge to which he pled guilty and the charge that was dismissed in return for his plea.

involving similar misconduct by Lunsford, Lunsford falsely identified a confidential informant in an affidavit supporting a criminal complaint charging a suspect with possession of a firearm by a felon. Lunsford averred that the confidential informant—who in reality had "no involvement whatsoever in the investigation"—identified the suspect as a narcotics supplier, reported seeing the suspect with a handgun and selling narcotics, and confirmed the suspect's identity with a photograph. J.A. 61-62. The suspect was subsequently indicted and pled guilty to the firearms charge. But the suspect had not yet been sentenced at the time of Lunsford's arrest. Based on Lunsford's misconduct, the government allowed the suspect to plead to a less serious offense, and he received a sentence of forty-eight months in prison. The only difference between that case and Defendant's is that Defendant did not learn of Lunsford's misconduct until after sentencing.

Finally, allowing a defendant's guilty plea to stand when a police officer intentionally lies in a search warrant affidavit undermines public confidence in our judicial system. "Whether to prosecute, issue a warrant, indict and convict are serious matters that are decided in large measure based on what a police officer relates. So when an officer does not tell the whole truth, public confidence in the fair administration of criminal justice inevitably is eroded." *United States v. Gribben*, 984 F.2d 47, 48 (2d Cir. 1993).

*REVERSED*

AGEE, Circuit Judge, dissenting:

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea" and "has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea." *United States v. Moussaoui*, 591 F.3d 263, 279 (4th Cir. 2010). As the Supreme Court has explained,

UNITED STATES v. FISHER                    17

> when a criminal defendant enters a guilty plea, he
> may not thereafter raise independent claims relating
> to the deprivation of constitutional rights that
> occurred prior to the entry of the guilty plea. Rather,
> a person complaining of such antecedent constitu-
> tional violations is limited . . . to attacks on the vol-
> untary and intelligent nature of the guilty plea.

*Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974) (internal cita-
tions and quotation marks omitted).

Recognizing the bar on a stand-alone collateral attack to the
search warrant issued in this case, Fisher instead advances a
claim that his plea was involuntary, i.e., "inadequate." *See
Moussaoui*, 591 F.3d at 279. His argument, distilled to its
essence, is that he would not have pled guilty had he been
aware that Officer Lunsford fabricated certain facts on the
application for a search warrant in this case. Although the
Supreme Court has held that "[a] defendant is not entitled to
withdraw his plea merely because he discovers long after the
plea has been accepted that his calculus misapprehended the
quality of the State's case," *Brady v. United States*, 397 U.S.
742, 757 (1970),[1] Fisher seeks to avail himself of a narrow
exception to that principle that applies to pleas induced by
"misrepresentation or other impermissible conduct by state
agents," *id.*

As best I can glean from Fisher's briefs, he raises two dis-
tinct claims that he posits fit under this undefined and rarely
applied exception: (1) that the government failed to meet its
evidentiary disclosure obligations based on *Brady v. Mary-
land*, 373 U.S. 83 (1963); and (2) the pre-plea misconduct of
Officer Lunsford independently rendered his guilty plea
involuntary irrespective of any *Brady v. Maryland* violation.

---

[1]Because this opinion involves extensive discussion of *Brady v. United
States*, as well as *Brady v. Maryland*, 373 U.S. 83 (1963), I refer to each
by its long title to lessen the likelihood of confusion.

The majority opinion concludes that Fisher's plea of guilty was involuntary because of "affirmative misrepresentations" made by Officer Lunsford in applying for the search warrant that uncovered evidence against Fisher. In so doing, the majority relies on an independent theory of prosecutorial misconduct purportedly grounded in *Brady v. United States*. Indeed, while the majority avers that its holding is based on *Brady v. United States*, its application of the "material misrepresentation" standard in this case lacks support in any published case from any court. While the majority attempts to distinguish the several cases militating against Fisher's claim to relief, it identifies no authority actually in support of its position. In short, I am at a loss to identify the basis in due process jurisprudence upon which the majority opinion bases its decision.

With that handicap, I address below the theories presented by Fisher in his brief on appeal and conclude he is not entitled to withdraw his guilty plea. As the learned district court judge correctly determined, Fisher is bound to his guilty plea, and the majority opinion articulates no reasoned basis founded in the established precedent of the Supreme Court, or any other court, to decide otherwise.

I.   *Brady v. Maryland* Claim

Fisher's initial assignment of error is that the prosecution in this case violated the government's disclosure obligations under *Brady v. Maryland*, so as to render his guilty plea involuntary.[2] In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.

---

[2] The majority, basing its holding on *Brady v. United States*, does not address Fisher's *Brady v. Maryland* argument. As explained herein, I would reject this aspect of Fisher's claim.

The Supreme Court subsequently extended the *Brady v. Maryland* disclosure rule to material impeachment evidence, *Giglio v. United States*, 405 U.S. 150, 154-55 (1972), and jettisoned any requirement that a defendant must request exculpatory evidence in order to be entitled to its disclosure, *United States v. Agurs*, 427 U.S. 97, 107 (1976).

However, Fisher cannot avail himself of a *Brady v. Maryland* claim as the basis upon which to withdraw his guilty plea. In *United States v. Ruiz*, 536 U.S. 622 (2002), the Supreme Court explicitly rejected the claim that a guilty plea is involuntary merely because the prosecution failed to disclose impeachment evidence to the accused prior to the plea. *See id.* at 629 ("[I]mpeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* ('knowing,' 'intelligent,' and 'sufficiently aware.'") (emphasis in original) (brackets omitted)). The Court explained that the Constitution "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *Id.* at 630. Thus, a court may accept a guilty plea as valid notwithstanding a prosecutorial failure to disclose evidence casting doubt on the credibility of government witnesses. This Court has explicitly recognized that distinction: "The *Brady [v. Maryland]* right, however, is a *trial* right. . . . [It] exists to . . . minimize the chance that an innocent person would be found guilty. . . . When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted." *Moussaoui*, 591 F.3d at 285.

Any *Brady v. Maryland* claim Fisher might have is controlled by and subsumed under *Ruiz*. The evidence Fisher cites here, and relied upon by the majority, is precisely that addressed in *Ruiz*: impeachment evidence. Fisher does not complain that the prosecution withheld evidence that would be exculpatory of him; that is, would show his innocence.

Rather, Fisher complains that had he known of Officer Luns-
ford's misconduct (lying about the true identity of the infor-
mant), he would have sought to attack Lunsford's reputation
for veracity so as to discredit by inference Lunsford's other
statements in the warrant affidavit. In other words, he would
have sought to impeach Officer Lunsford's credibility by vir-
tue of the false statement, not use the evidence as affirmative
proof of his own innocence.

Indeed, neither Fisher or the majority cite any evidence
Fisher's attack on Lunsford's credibility would yield as excul-
patory to him. Damaging Lunsford's credibility by impeach-
ing his testimony is no more exculpatory than any other
evidence viewed as tainted by virtue of the witness' lack of
credibility: that is the essence of impeachment.

As discussed more fully below, we also know that the evi-
dence Fisher seeks to discredit does not show affirmative
proof of Fisher's innocence because Fisher himself does not
assert that he is innocent of the crime to which he pled guilty.
The discrediting of Lunsford on the basis of his false identifi-
cation of the name of the confidential informant is unques-
tionably impeachment evidence, as it does not "establish[ ]
the factual innocence of the defendant." *Ruiz*, 536 U.S. at 631.
Consequently, *Ruiz* flatly forecloses Fisher's claim of error to
the extent he basis it on *Brady v. Maryland*.

Even if one were to assume, however, that the evidence at
issue here is affirmatively exculpatory (quite an extraordinary
stretch), rather than merely for impeachment purposes, there
is *no* existing precedent from the Supreme Court or this Court
that entitles Fisher to relief on the basis of his pre-plea claim.

> The *Brady[v. Maryland]* right . . . is a *trial* right. It
> requires a prosecutor to disclose evidence favorable
> to the defense if the evidence is material either to
> guilt or punishment, and exists to preserve the fair-

> ness of a trial verdict and to minimize the chance
> that an innocent person would be found guilty.

*Moussaoui*, 591 F.3d at 285 (emphasis in original). As we also observed in *Moussaoui*, the Supreme Court's decision in *Ruiz* was predicated on the notion that, when a defendant pleads guilty, *Brady v. Maryland*'s concerns in preventing the conviction of an innocent defendant "are almost completely eliminated because his guilt is admitted." *Id. Accord United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010) ("It is . . . universally acknowledged that the right memorialized in *Brady [v. Maryland]* is a trial right."). More to the point, to the extent that this Court has ventured into the arena of whether *Ruiz* portends a foreclosure of any *Brady v. Maryland* right in the pre-plea context (which is the case here), we concluded such a claim was *not* recognized: the exact opposite of the majority opinion's end result here. *See Jones v. Cooper,* 311 F.3d 306, 315 n.5 (4th Cir. 2002) ("To the extent that appellant contends that he would not have pled guilty had be been provided the information held by the jailor, this claim is foreclosed by . . . *Ruiz*."). In other words, *Cooper* held that *Ruiz* foreclosed a defendant's contention that he would not have pled guilty had he been provided certain death penalty mitigation evidence prior to the entry of his guilty plea. The Supreme Court has not extended a *Brady v. Maryland* right in the context of Fisher's case: pre-plea conduct unrelated to a trial. And this Court has explicitly declined to decide whether "the prosecution's failure to disclose material *exculpatory* evidence at the plea stage could result in an unknowing plea in certain narrow circumstances." *Moussaoui*, 591 F.3d at 286 (emphasis added). If the majority wishes to venture where neither the Supreme Court or this Court has seen fit to go, it is incumbent to set out the reasoned analysis based on settled precedent that permits that step. The majority opinion does not do so.[3]

---

[3]The Supreme Court's due process concerns as articulated in *Brady v. Maryland* are *de minimis* in a case where the defendant makes no conten-

Finally, even if this Court were to hold, absent any supporting precedent, that *Brady v. Maryland* extends pre-plea to evidence pertaining to a motion to suppress, and even if one assumed that the evidence suppressed in this case was construed as directly exculpatory (which it is not), it is by no means certain that Fisher would have prevailed in seeking to suppress the fruits of the search warrant in this case. Pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978), a defendant challenging the validity of the warrant has the burden to come forth with proof of a "deliberate falsehood or of reckless disregard for the truth." Even if the defendant carries that burden, *Franks* requires only that the demonstrably false information be set aside. *Id.* at 171-72. If the remaining content of the warrant still supports probable cause, the defendant is not entitled to a hearing on his *Franks* claim. *Id.* at 172.

The majority assumes, without analysis or citation to authority, that the mere fact of Lunsford's misrepresentation made the Fisher search warrant invalid: a form of *res ipsa loquitor*. But neither logic, the record, or precedent support the majority's assumption. Lunsford was accused of "falsely attribut[ing] information to informants who then shared reward money with him." (J.A. 136.) After his arrest by federal authorities, Lunsford admitted only that another individual was the actual source of the information that formed the basis for the application to search Fisher's home. (*See* J.A. 65 ("[Redacted] was the real informant on the Cortez Fisher case.").) In other words, Lunsford admitted he substituted the

---

tion that he is innocent of the offense charged. Rather, the evidence of Officer Lunsford's misconduct would be relevant only to the issue of suppression of evidence, not Fisher's guilt or innocence. A suppression hearing, of course, has nothing to do with "minimiz[ing] the chance that an innocent person would be found guilty." *Moussaoui*, 591 F.3d at 285. Rather than shedding light on Fisher's guilt or innocence, a suppression hearing in this case would function only in determining whether Fisher's constitutional rights had been violated. In short, vacating Fisher's guilty plea would do nothing to advance the due process interests articulated in *Brady v. Maryland*.

name of another person for that of the real informant so as to
receive his kickback once the informant received his "re-
ward." However, neither Fisher's admission or any other
record evidence shows that any item of information on the
search warrant was untrue but for the substitution of the name
of the informant. While that obviously is viable impeachment
evidence, the record also reflects that Lunsford admitted in
other cases—but not Fisher's—that the actual allegations of
wrongdoing were false. (*See* J.A. 57-60.) The record in this
case only shows the switch of the name of the informant and
nothing more. Consequently, the majority opinion's statement
that the search warrant "issued solely on the basis of an
untruthful law enforcement affidavit" is a bit of hyperbole in
the context of the record as a whole. *Ante* at 11.

A district court could, reviewing the record evidence upon
impeachment of Lunsford, conclude that the Fisher warrant
application was false. However, the court could also reason-
ably conclude that Lunsford fabricated only the identity of the
source of the information and that the stated events were not
falsified and met the probable cause standard for issuance of
the search warrant. In that circumstance, a motion to suppress
would fail, as the information necessary for probable cause
was unrelated to the actual misstatement contained in the affi-
davit. *See United States v. Doyle*, 650 F.3d 460, 468 (4th Cir.
2011) ("[F]alse information will only void a warrant if the
information was necessary to the finding of probable cause.").

Indeed, *Franks* itself contemplates that the mere fact that a
warrant affiant lied with respect to one piece of information
does not mean that the entirety of the affidavit should be
invalidated. *See Franks*, 438 U.S. at 155-56 ("[W]here the
defendant makes a substantial preliminary showing that a
false statement knowingly and intentionally, or with reckless
disregard for the truth, was included by the affiant in the war-
rant affidavit, and *if the allegedly false statement is necessary
to the finding of probable cause*, the Fourth Amendment
requires that a hearing be held at the defendant's request.")

(emphasis added). The defendant must prove that the facts necessary for probable cause were lies as well.

In discussing the underlying merits of Fisher's potential *Franks* claims, the majority establishes only that Lunsford misattributed the source of the information contained in the warrant application. Nevertheless, the majority opinion concludes that the rest of the information was necessarily untrue. *See*, *ante* at 14 ("[T]he confidential informant listed on the search warrant affidavit did not provide all of the above-mentioned information. Without that information, a district court could reasonably conclude that Lunsford's search warrant affidavit failed to establish probable cause."). But that conclusion does not follow logically from the record in this case. Lunsford admitted only to falsifying the source, not the information itself. Thus, only the source informant would necessarily be excised under *Franks*. The information itself could reasonably survive the scalpel of the *Franks* inquiry.

Moreover, there is no merit to the majority opinion's repeated suggestion that the district court somehow implied that Fisher would succeed on a motion to suppress. The district court, in its order denying Fisher's § 2255 motion, did state that Fisher would have moved to suppress. But the court expressly declined to speculate on the likelihood of success of such a motion, simply stating "the motion *may well* have been successful." (J.A. 136 (emphasis added).) Conversely, the motion "may well" have failed. In any event, there is nothing "concrete[ ]," *ante* at 13, about the court's description of the likelihood of success of a motion to suppress, and any effort to say otherwise misreads the district court's actual words.

Accordingly, I would hold that under the facts of this case, where the evidence at issue is not exculpatory, but impeachment only, and where the defendant does not contest his guilt, the type of disclosures required by *Brady v. Maryland* and its progeny are not required as a predicate for a knowing, volun-

tary plea of guilty. Consequently, Fisher has no basis under *Brady v. Maryland* upon which to withdraw his guilty plea.

## II.   Independent Prosecutorial Misconduct Claim

I turn next to Fisher's argument that certain prosecutorial misconduct, not cognizable under *Brady v. Maryland*, justifies setting aside his plea. Significantly, neither Fisher's brief on appeal nor the majority opinion cites any authority directly on point or defines the due process right of which Fisher seeks to avail himself. I assume that is so because the weight of authority militates against Fisher's claim and compels affirming the district court's judgment.

As the Supreme Court explained in *Brady v. United States*

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1957) (en banc)). From this language, Fisher argues, and the majority agrees, that the "misrepresentations" by Lunsford "underpin[ ] the entire case made against [Fisher] and induced his guilty plea." *Ante* at 7. A closer analysis of the relevant authorities, however, reveals little, if any, support for the majority's formulation of an otherwise undefined and unsupported due process claim.

To be sure, the *Brady v. United States* opinion states, without illumination or explanation, that "misrepresentations" that

induce a guilty plea may be grounds upon which to void a
prior guilty plea. 397 U.S. at 755. Contrary to the majority's
statement, at 8, that "*Brady v. United States* does not limit
government misrepresentations to prosecutorial promises
designed to elicit a guilty plea," a close reading of that case
reflects the scope of the court's meaning was in fact strictly
limited and referred only to false representations directly
designed to induce a defendant to plead guilty. The Court's
frame of reference in *Brady v. United States* did not encom-
pass actions tangentially related to the plea process, like a
warrant application months in advance of the defendant's
guilty plea. Even the examples of misrepresentations and
impermissible conduct provided by the Court ("unfulfilled or
unfulfillable promises" and "bribes") relate directly to pro-
secutorial actions specifically designed to elicit a plea of guilty.[4]
Although the majority asserts that *Brady v. United States* was
not so limited, it identifies no case involving a misrepresenta-
tion so remotely divorced from the plea process as the warrant
application at issue in this case.

For purposes of *Brady v. Maryland*, the Supreme Court has
held that knowledge of agents acting on the government's
behalf, including the police, can be imputed to the prosecutor.
*See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[P]rosecutor
has a duty to learn of any favorable evidence known to the
others acting on the government's behalf in the case, includ-
ing the police."). *But see United States v. Robinson*, 627 F.3d
941, 952 (4th Cir. 2010) ("[I]t is one thing to require prosecu-

---

[4]The cases cited by the majority in support of its "affirmative misrepre-
sentation" theory all involve prosecutorial actions directly related to the
plea process. *Ferrara v. United States*, 456 F.3d 278, 293 (1st Cir. 2006)
involved an active attempt by the prosecution to suppress evidence excul-
patory to the defendant, and *Santobello v. New York*, 404 U.S. 257, 259
(1971), *United States v. Ayala*, 601 F.3d 256, 270 (4th Cir. 2010), *Cor-
reale v. United States*, 479 F.2d 944, 946 (1st Cir. 1973), and *United
States v. Hammerman*, 528 F.2d 326, 331-32 (4th Cir. 1975) all involved
false (or allegedly false) promises made by the prosecution during plea
negotiations.

tors to inquire about whether police have turned up exculpa-
tory or impeachment evidence during their investigation. It is
quite another to require them, on pain of a possible retrial, to
conduct disciplinary inquiries into the general conduct of
every officer working the case."). But the majority opinion
cites no authority for the proposition that police misconduct,
happening months before the entry of the guilty plea and
devoid of any direct inducement of that plea, must be attri-
buted to the prosecution for purposes of Fisher's stand alone
prosecutorial misconduct claim relying on *Brady v. United
States*. Even assuming that Lunsford's falsification of the
informant's true identity in the warrant application—known
only to him—is attributable to the prosecution in a later pro-
ceeding, neither the majority nor Fisher cite to any precedent
applying an amorphous *Brady v. United States* "right" in that
circumstance.

   Indeed, the case both Fisher and the majority utilize to bear
most of the weight in support of his claim, the First Circuit's
decision in *Ferrara v. United States*, 456 F.3d 278 (1st Cir.
2006), is materially distinguishable from the case at bar and
essentially discredits both Fisher's arguments and the major-
ity opinion.[5] In *Ferrara*, the court opined that "[u]nder limited
circumstances . . . the prosecution's failure to disclose evi-
dence may be sufficiently outrageous to constitute the sort of
impermissible conduct that is needed to ground a challenge to
the the validity of a guilty plea." 456 F.3d at 291. In that case,
however, the "outrageous" conduct consisted of "manipulate-
[ing]" a witness, and then "represent[ing] to the court and the
defense that the witness was going to confirm [a] story" incul-
pating the defendant in a murder plot, when in fact the witness
had provided the government with affirmative evidence of the
defendant's innocence. *Id.* The government conduct at issue
in *Ferrara* went directly to exculpatory evidence of the actual

---

[5]In *Ferrara*, the First Circuit explicitly declined to address whether the
defendant had a constitutional right to *Brady v. Maryland* disclosures prior
to entry of his plea. *Ferrara*, 456 F.3d at 290.

28          UNITED STATES v. FISHER

innocence of the defendant as the prosecution secreted wit-
ness testimony that the defendant did not commit the crime
with which he was charged.

  *Ferrara* is fundamentally distinguishable on three signifi-
cant levels from the case at bar. First, the defendant in *Fer-
rara* asserted that he was innocent of the offence to which he
pled guilty. *See Ferrara v. United States*, 384 F. Supp. 2d
384, 388 (D. Mass. 2005) ("Ferrara informed the Probation
Department that he had not been involved in the . . . murder,
but pled guilty to those charges because he was in an 'untena-
ble' position."). Fisher makes no such claim, essentially argu-
ing that he deserves to withdraw his guilty plea because Luns-
ford did a bad thing. But even the majority opinion acknowl-
edges that, after *Ruiz*, "courts have considered a defendant's
factual innocence in determining whether the government's
failure to disclose material evidence render[s] a guilty plea
involuntary." *Ante* at 11.

  Second, in *Ferrara*, the prosecutor was actively involved in
witness manipulation and suppression of affirmative evidence
tending to show the defendant's innocence (i.e., he didn't do
it). Here, no one but Lunsford was aware of his false state-
ments. When the prosecution discovered Officer Lunsford's
misdeeds, it promptly disclosed that information to Fisher.

  Finally, unlike the present case, the evidence at issue in
*Ferrara* went directly to the defendant's innocence; it was
clearly exculpatory evidence. *See Ferrara*, 456 F.3d at 292
("The evidence in question . . . was plainly exculpatory."). As
noted at length above, Fisher's evidence is not.

  These distinguishing factors discussed in *Ferrara* as sub-
stantiating application of the narrow exception in *Brady v.
United States* are simply not present in the case at bar. And
without the lone support of the out of circuit authority in *Fer-
rara*, Fisher's argument and the majority opinion collapse.
Indeed, *Brady v. United States* counsels that Fisher should be

held to his plea. *See Brady v. United States*, 397 U.S. at 755 ("A plea of guilty entered by one fully aware of the direct consequences . . . *must stand* unless induced by threats . . . misrepresentation . . . or . . . by promises that are by their nature improper as having no proper relationship to the prose-cutor's business." (emphasis added)) .

The apparent lynchpin for the majority's ultimate conclu-sion appears to be that, notwithstanding all the foregoing, Fisher's case is somehow distinguishable because it "centers not on the government's failure to disclose evidence, but rather on its affirmative misrepresentations." *Ante* at 11. This is a distinction without meaning which seems self evident from the lack of *any* authority in the majority opinion to sup-port its conclusion.

The distinction between misrepresentations and omissions is a false dichotomy. In *Ferrara*, the prosecution was under a continuing pre-trial obligation, pursuant both to the local rules of that district and a continuing court order, to disclose "*all* evidence within the government's ken that tended to negate a defendant's guilt." 456 F.3d at 292 (emphasis in original). The prosecution's failure to disclose the exculpatory evidence was, in that case, not materially different from a false representation to the defendant that it had no exculpatory evidence. *See id.* at 293 ("[I]t is fair to say that the govern-ment . . . impliedly promised that it would provide the peti-tioner with all exculpatory evidence."). Yet the *Ferrara* court focused on the exculpatory nature of the evidence in question, rather than on the fact that the government falsely represented that it had complied with its disclosure obligations.

The majority's reliance on the distinction, such as it is, between omissions of evidence and misrepresentations of that same evidence is simply misplaced. Courts have instead focused the inquiry, quite appropriately, on whether the evi-dence goes to the guilt or innocence of the defendant. *See, e.g.*, *Brady v. United States*, 397 U.S. at 758 ("we have no

reason to doubt that [the defendant's] solemn admission of
guilt was truthful"); *Ruiz*, 536 U.S. at 628 (describing a con-
stitutional question concerning "a federal criminal defendant's
waiver of the right to receive from prosecutors *exculpatory*
impeachment material" (emphasis added)); *Matthew v. John-
son*, 201 F.3d 353, 365 (5th Cir. 2000) (courts assessing
whether a defendant's plea is valid may "consider such factors
as whether there is evidence of factual guilt"); *Ferrara*, 456
F.3d at 292 ("The evidence in question . . . was plainly excul-
patory.").

Once again, Fisher does not contend that he is innocent of
the offense to which he pled guilty. Nor is there record evi-
dence representing affirmative proof of his innocence. In
these circumstances, I am in agreement with the district court
that "a failure to allow Fisher to withdraw his guilty plea
would [not] result in a miscarriage of justice." (J.A. 136 (quo-
tation marks omitted).)[6]

In sum, because neither Fisher nor the majority opinion
identifies the basis for, or the contours of, the undefined due
process right of which Fisher seeks to avail himself, Fisher
must be bound by his guilty plea, a "solemn admission[ ] in
open court that he committed the act with which he [was]
charged." *Brady v. United States*, 397 U.S. at 757.

---

[6]The majority identifies one final basis for granting relief: that suspects
in other cases who discovered Lunsford's misconduct prior to pleading
guilty were able to negotiate plea agreements with more favorable terms.
It would therefore be unfair to Fisher to hold him to his plea, which was
entered before he learned of Lunsford's misdeeds. *Ante* at 15-16.

This appeal to an undefined notion of fairness, however, is not tethered
to any authority whatsoever. It has nothing to do with whether Fisher's
plea was knowing and voluntary, and is in no way indicative of whether
the plea was invalid.

Appeal: 11-6781    Doc: 51    Filed: 04/02/2013    Pg: 32 of 32

III.   Conclusion

To be clear, I certainly agree with the majority that Lunsford's conduct in falsifying the identity of the informant on the search warrant was reprehensible. But our natural reaction of extreme distaste to Lunsford's criminal act does not instantaneously transform Fisher's guilty plea into some form of due process violation that permits him to now withdraw that plea. Only a well-grounded application of settled precedent would permit such an extraordinary result. With respect for my distinguished colleagues, that indispensable factor is missing in the majority opinion.

For all of the reasons discussed above, I believe the majority opinion errs in reversing the judgment of the district court. Under either the traditional *Brady v. Maryland* framework, or some form of claim under *Brady v. United States* claim, Fisher is not entitled to the relief he seeks. The district court did not err in denying Fisher's motion to vacate his conviction and sentence under 28 U.S.C. § 2255. I respectfully dissent.